UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

LEONARDO DOUGLAS,

         Petitioner,

  - versus -

STATE OF NEW YORK,

         Respondent.

MEMORANDUM
AND ORDER
14-CV-4522 (JG)

A P P E A R A N C E S:

  LABE M. RICHMAN
    305 Broadway
    Suite 100
    New York, NY 10007
    *Attorney for Petitioner*

  RICHARD A. BROWN
    District Attorney, Queens County
    124-01 Queens Boulevard
    Kew Gardens, New York 11415
  By: Daniel Bresnahan
    *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

    Leonardo Douglas petitions under 28 U.S.C. § 2254 for habeas corpus relief from a New York state conviction and sentence of three and one-half years in prison, to be followed by two and one-half years' post-release supervision. The conviction and sentenced followed Douglas's plea of guilty to Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(1)). Douglas was incarcerated pursuant to the challenged conviction and sentence at the time he filed the petition, but he has since been released from custody. I heard oral argument on February 6, 2015. For the reasons that follow, the petition is denied.

BACKGROUND

A.  *Facts of the Crime and Charges*

Leonardo Douglas came to the United States in 1996 when he was 19 years old – 16 years prior to his plea of guilty in this case. On December 20, 2011, Douglas and his then-girlfriend, Tabitha Martinez, were arguing in the apartment they shared at 39-30 59th Street in Queens. When Martinez attempted to leave, Douglas cut her in the face and chest with a barber's razor. Sometime later, under the pretext of taking out the garbage, Martinez left the apartment and called 911. She told the 911 operator that Douglas was not letting her leave the apartment and that he was known to carry a gun. Martinez then returned to the apartment.

When police arrived, they located Martinez, who had visible injuries to her face. She told one of the officers that Douglas kept a gun in a closet. The officer checked the closet and found a loaded .45 caliber Colt semi-automatic pistol in the pocket of a jacket. The officer also recovered 113 small ziplock bags containing cocaine and $800 from the jacket pocket.

Martinez was treated at Elmhurst Hospital in Queens for her injuries. The cut to her chest required four stiches to close and the cut to her face was glued closed.

Upon his arrest, Douglas admitted that he lived at the apartment and that Martinez had been living with him for about one year. He further admitted that he had been fighting with her and that he owned the jacket in which the loaded gun and cocaine were found.

Douglas was charged with six offenses: two counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16 (1), (12)); Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(1)); Assault in the

Second Degree (N.Y. Penal Law § 120.05 (1), (2)); Unlawful Imprisonment in the First Degree (N.Y. Penal Law § 135.10); and Criminally Using Drug Paraphernalia in the Second Degree (N.Y. Penal Law § 220.05 (2). Def. Oppo. Memo. at 4.

B.  *Guilty Plea and Sentencing*

On April 17, 2012, Douglas appeared with counsel in New York Supreme Court, Queens County, and pled guilty to a single count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(1)), a class C violent felony in satisfaction of all the charges. Plea Proceeding at 6-7, ECF No. 1 ("Pl. Pr."). Douglas pled guilty to an aggravated felony charge under the immigration law, which leads to deportation with no chance for cancellation of removal. *See* 8 U.S.C. §1229b(a)(3) (an alien who has been convicted of any aggravated felony is ineligible for cancellation of removal). In exchange, Douglas received a promised sentence of three and one-half years in prison, followed by two and one-half years post-release supervision. He was also subjected to a final order of protection against him on behalf of Martinez. Pl. Pr. at 6-7.

At the beginning of the plea proceeding, the prosecutor provided Douglas's defense counsel a copy of the notice of the immigration consequences.[1] *Id*. at 1; Notice, Pet. Ex. C, ECF No. 1 ("Ntc."). The notice stated that "removal proceedings are presumptively mandatory" for any crime involving a firearm. Ntc. Douglas's current counsel maintains that this information is wrong and could lead Douglas and others in his position not to pursue alternative plea bargains.

During the plea colloquy, Douglas confirmed under oath that he knowingly and

---

[1] The proceeding transcript does not indicate whether defense counsel handed the notice to or otherwise discussed it with Douglas. It does not appear that Douglas read the notice.

voluntarily waived his right to be prosecuted by an indictment, that he had discussed the guilty plea with his attorney, that he received no other promises in exchange for his plea of guilty, and that he was pleading freely and voluntarily. Pl. Pr. at 5, 7. He acknowledged that he understood that by pleading guilty he was giving up his right to a trial by jury. *Id*. at 8. The court asked Douglas whether he understood that a plea of guilty "may subject [him] to involuntary deportation, exclusion from admission to [the U.S.] or denial of naturalization," to which he answered "yes." *Id*. at 9. Douglas pled guilty to possession of a gun with the intent to use it unlawfully and waived his right to appeal his conviction. *Id*. at 9-10.

C. *Direct Appeal*

On May 13, 2013, Douglas, through counsel, filed a motion in the New York Appellate Division, Second Department, to file a late notice of appeal from the judgment of conviction. Def. Oppo. Memo. at 7. The State filed its opposition to Douglas's motion to file a late notice of appeal on May 24, 2013. *Id*. The Appellate Division granted Douglas's motion on July 10, 2013, and deemed his moving papers to constitute a timely notice of appeal. *Id*.

Douglas has not yet perfected his appeal and has additional claims that he intends to raise on direct appeal to the Appellate Division. Pet. Memo. at 5. He waives any resort to those claims in this petition. *Id*. As explained at oral argument, his attorney has made the tactical decision to pursue this targeted habeas petition in advance of the direct appeal.

D. *The Motion to Vacate Judgment*

On May 27, 2013, Douglas moved to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10 ("§ 440 Mot.") raising two claims. *See* § 440 Mot. at 1, ECF 6-1. First, Douglas claimed that his attorney was ineffective because he advised Douglas that the only way for him to avoid deportation based on the charges against him was to obtain an

4

acquittal at trial. Def. Oppo. Memo. at 8. Douglas claimed that this was incorrect because there were other pleas that could have been negotiated that would not have eliminated his chance to obtain cancellation of removal. § 440 Mot. at 3. "For example, [he] could have negotiated a plea to a drug weight possession offense or possession of a weapon outside the home or place of business, neither of which would have been an aggravated felony under immigration law." *Id*. Pleading to such an offense, Douglas argued, would not have subjected him to mandatory deportation with no option for cancellation of removal.

In support of his claim, Douglas submitted an affidavit from the attorney who represented him at his guilty plea. The attorney stated that he had incorrectly advised Douglas that the only way he could avoid the immigration consequences was to go to trial. *See* Att. Aff., Pet. Ex. C, ECF No. 6-1. The attorney further stated that there were in fact other pleas that could have been negotiated that would have preserved Douglas's eligibility for cancellation of removal. *Id.* Douglas also claimed that New York C.P.L. § 220.50(7), which requires the court to advise a non-citizen defendant that a guilty plea may result in deportation, was unconstitutional as applied to him because the use of the word "may" downplayed the immigration consequences; in Douglas's case deportation and denial of citizenship are in fact mandatory. § 440 Mot. at 1.

In a submission dated July 31, 2013, the prosecutor argued that Douglas's motion should be summarily denied. *See* § 440 Oppo. Memo, ECF No. 6-1. First, he contended that Douglas's claim that New York C.P.L. § 220.50(7) was unconstitutional was mandatorily barred pursuant to C.P.L. § 440.10(2)(b) because it was based on matters appearing on the record and thus could be raised on his pending direct appeal. *Id*. at 8.

5

Second, the prosecutor argued that both of Douglas's claims were without merit. *Id*. He contended that Douglas had failed to establish that his counsel's representation fell below an objective standard of reasonableness, as required under *Strickland v. Washington*, 466 U.S. 668 (1984). § 440 Oppo. Memo. at 15. He pointed out that Douglas's attorney had negotiated a plea to a single count of Criminal Possession of a Weapon in the Second Degree to cover all of the charges, that the prison sentence of three and one-half years was favorable under the circumstances, and that Douglas's post-release supervision of two and one-half years was also favorable under the circumstances. *See id*. at 17-19. Moreover, the prosecutor argued that Douglas's attorney's advice that the only way to avoid deportation was to succeed at trial was entirely correct based on the offer to Douglas that he plead to the third-degree weapon possession charge. *Id*. at 21. Because this offense was an aggravated felony, it was true that it subjected Douglas to mandatory deportation. *Id.* Thus, the only way to avoid this consequence was to be acquitted by a jury at trial. *Id*.

The prosecutor also argued that counsel was not ineffective for failing to seek a bargain to criminal possession of a weapon outside the home (which would not have triggered mandatory deportation) because the complaint indicated that the gun was recovered from inside the home. *Id.* at 22. Additionally, he argued that Douglas's claim that he could have pled guilty to a drug offense, rather than a violent felony, was entirely speculative, and under the circumstances it was unlikely that the prosecutor would have allowed him to plead guilty to such a charge because it would have allowed Douglas to avoid recidivism-based sentence enhancements if he committed future crimes. *Id*. at 9. In any event, the prosecutor contended, Douglas had failed to establish that he was prejudiced by his attorney's actions because he did

not allege that he would have insisted on going to trial but for his attorney's advice.[2]  *Id*. at 10.

With regard to the second claim, the prosecution argued that Douglas had failed to overcome the strong presumption of the constitutionality of the statute. *Id*. The warning that he "may" be deported as a result of his guilty plea if he was a non-citizen could not have reasonably misled Douglas to believe there was a meaningful chance he would not be deported. *Id*.

On October 18, 2013, the New York Supreme Court, Queens County denied Douglas's motion in its entirety. Decision (Oct. 18, 2013), Ex. A, ECF No. 1 ("Dec."). First, the court held that Douglas's claim that C.P.L. § 220.50(7) was unconstitutional as applied to him was barred pursuant to C.P.L. § 440.10(2)(a) because his judgment was pending on direct appeal and sufficient facts appeared on the record to raise the claim on that appeal. *Id.* at 2.

Second, the court held that Douglas had failed to establish that he was deprived of meaningful representation and denied his ineffective assistance of counsel claim. *Id*. at 1. The court noted that Douglas claimed that he would not have pled guilty to the offense of conviction had he known he could have pled to other charges that would not have eliminated his eligibility for cancellation of removal. *Id*. at 4. The court noted that Douglas's attorney at the time had signed an affidavit stating that he misinformed Douglas about the potential immigration consequences and failed to negotiate Douglas's plea properly. *Id*. at 5.

Notwithstanding these facts, the court found that Douglas's argument that he could have pled to a different offense – one with less severe immigration consequences – was

---

[2]  While Douglas did not specifically state that he would have gone to trial but for his attorney's actions, he did allege that he would not have accepted the offer pursuant to which he pled guilty: "Had I not been misled as to my options, I never would have taken this plea. I believe that I could have received such a plea offer and I would have been willing [to] fight for what I realistically could obtain. I accepted mandatory deportation without knowing my true options. I would never have done so." Def. Aff., § 440 Mot., Ex. D.

speculative and that he did not submit any evidence that the prosecutor would have offered such a plea. *Id*. at 6. The court noted that under 8 U.S.C. § 1227(a)(2)(A)(i), Douglas would have faced automatic deportation had he pled guilty to *any* of the felony offenses charged in the complaint. *Id*. at 8. In considering Douglas's argument that he could have pled guilty to possession of a firearm outside the home or place of business, the court noted that this was not a lesser included offense of Criminal Possession of a Weapon in the Second Degree, and that this offense would not have been supported by the facts in the record. *Id*. Additionally, the court observed that the only "drug weight possession" offense that would not have rendered Douglas deportable was possession of 30 grams or less of marijuana, and there was no indication that Douglas possessed any quantity of marijuana. *Id*. The court concluded that any plea bargain that would have saved Douglas from mandatory deportation would not have been acceptable to the prosecution, and Douglas's counsel could therefore not be held ineffective for failing to seek or obtain such a plea. *Id*. at 9. Finally, the court added that even if the prosecutor had offered a plea bargain that would spare Douglas mandatory deportation, the court itself would not have accepted it. *Id*. at 8-9. Accordingly, the court denied Douglas's motion without a hearing. *Id*.

On January 20, 2014, the Appellate Division denied Douglas's motion for leave to appeal from the denial of his motion.

E.     *The Instant Petition*

Douglas now seeks a writ of habeas corpus, alleging that he was provided ineffective assistance of counsel because his attorney incorrectly told him that the only way he could avoid deportation was through acquittal at trial, when he in fact could have avoided mandatory deportation by pleading guilty to other non-violent offenses, and his attorney failed to attempt to negotiate such a disposition.

8

DISCUSSION

A.  *Standards of Review*

   1.  *AEDPA Deference to State Court Decisions*

Under 28 U.S.C. § 2254(a), a district court can "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must satisfy the stringent standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to obtain habeas relief. *See* Pub. L. No. 104–132, 110 Stat. 1214 (1996). Specifically, a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision on the merits is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 407.

AEDPA's deferential standard of review "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation marks and citation omitted). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the court should ask whether the state court's application of federal law was objectively unreasonable. *Id*. at 409. In addition, a federal habeas court must presume all state court factual determinations to be correct, unless the petitioner rebuts the findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. *Ineffective Assistance of Counsel Claims*

To establish a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687. To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

It is well-settled that a defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1386-86 (2012); *Padilla* v. *Kentucky,* 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). The Second Circuit has held that "an affirmative

10

misrepresentation of the deportation consequences of a guilty plea falls outside this range of professional competence." *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014). As I have noted before, "*Padilla* applies both to affirmatively incorrect advice (the rule in the Second Circuit at least since *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002)) as well as to counsel's omissions." *Worlumarti v. United States*, No. 13-CV-6202 (JG), 2014 WL 1783071, at *5 (E.D.N.Y. May 5, 2014).

The combination of the AEDPA and *Strickland* standards creates an exceedingly high bar for habeas petitioners. As the Supreme Court has explained,

> The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, *the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard*.

*Harrington*, 562 U.S. at 105 (quotation marks and citations omitted) (emphasis added).

B.      *Application to Douglas's Claim*

When reviewed under the deferential standard of AEDPA and *Strickland*, Douglas's claim fails. While there is some support for Douglas's contention that his attorney's performance was deficient, the case does not turn on that issue because the state court's determination that the second prong of *Strickland* has not been met cannot be characterized as unreasonable.

Douglas's counsel informed him that the only way he could avoid mandatory deportation was to take his case to trial and win. Upon hearing that advice, Douglas decided to plead guilty. On this petition, Douglas asserts that the advice was wrong. In fact, he claims the

11

lawyer could have helped him avoid mandatory deportation by negotiating a more favorable plea bargain, one that would allow Douglas to both plead guilty *and* avoid mandatory deportation. The failure to seek such a plea bargain is where, according to Douglas, his counsel fell below the standard of care, satisfying the first prong of the *Strickland* test. As part of his support for that claim, Douglas has obtained from former counsel an admission that he indeed fell below the standard of care by failing to negotiate for an alternative plea bargain.

Assuming without deciding that the first prong of *Strickland* has been met, Douglas's petition fails because the state court found that it would have made no difference to Douglas if his lawyer had attempted to negotiate such an alternative bargain.

Among other things, the state court's written decision dated October 18, 2013, stated as follows:

> [A]part from his own speculation, the defendant submits no evidence to support his contention that the People would have offered such a plea. . . .
>
> [T]here is no reasonable possibility under the facts and circumstances that the defendant could have pleaded guilty to a non-deportable offense. . . .
>
> There is simply no basis upon which to conclude that the People would have offered a plea to such an offense, or that the Court would have allowed it. . . .[and]
>
> [C]ounsel cannot be held ineffective for failing to obtain a plea which would have been acceptable neither to the People nor the Court.

Dec. 6-9.

AEDPA contains two provisions requiring deference to state court fact findings. Section 2254(d)(2) prohibits the grant of a writ unless the state court decision "was based on an unreasonable determination of facts." Section 2254(e)(1) mandates a presumption of correctness

12

with respect to state court fact findings unless the petition rebuts them with clear and convincing evidence. These forms of deference attach to "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators[.]" *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995) (internal quotations and citation omitted). The state court's findings in this case were specific and based on the particular facts of Douglas's case.

In *Rice v. Collins*, 546 U.S. 333, 339 (2006), the Supreme Court found it unnecessary to decide whether a state court's findings of fact deserved § 2254(e)(1)'s presumption of correctness or "only" the deference owed under § 2254(d)(2). *See also Wood v. Allen*, 558 U.S. 290, 304-05 (2010) ("Because the resolution of this case does not turn on them, we leave for another day the questions of how and when § 2254(e)(1) applies in challenges to a state court's factual determinations under § 2254(d)(2)."). The same is true here.

It's hard to imagine a factual context in which AEDPA deference to state court findings is more justified than it is here. Specifically, the question is whether defense counsel, given the aggravating facts of Douglas's case – he slashed his victim in the face and chest with a barber's razor and possessed both a loaded .45 caliber semi-automatic firearm and a quantity of cocaine consistent with distribution – could have negotiated a plea bargain that would both spare him mandatory deportation and be acceptable to the prosecution and the state judge. The state court judge, after hearing from both sides and considering the matter carefully herself, concluded that counsel could not have accomplished that goal. Since that judge participates in such plea bargaining day in and day out, she would know. None of the arguments advanced by Douglas on his appeal convince me that her decision was incorrect, let alone unreasonable.

As a result, I reject Douglas's claim that if his counsel had acted competently, Douglas would not have taken the plea he took. Based on the state court findings I find

13

reasonable, the advice that counsel gave Douglas was essentially correct, that is, the only way Douglas could have fended off mandatory deportation given the aggravated nature of his crime would have been to go to trial and be acquitted. Knowing that at the time, Douglas obviously chose to plead guilty. As for the plea bargain his counsel managed to negotiate, the state court had the following observations:

> In fact, the defendant's plea counsel negotiated a more favorable agreement than the one originally offered by the People and "substantially reduced defendant's exposure to a more lengthy prison term if convicted after a trial[.]" Had he been indicted on the felony complaint and convicted after trial, the defendant faced a maximum sentence of fifteen (15) years' imprisonment and five (5) years' post-release supervision on Criminal Possession of a Weapon in the Second Degree, consecutive to a maximum sentence of seven (7) years' imprisonment and five (5) years' post-release supervision on Assault in the Second Degree. The People's initial offer was a plea to Criminal Possession of a Weapon in the Second Degree in exchange for seven years' imprisonment. Counsel successfully bargained for the minimum sentence of three and a half years in prison followed by the minimum period of two and a half years' post-release supervision instead. Moreover, at sentencing, plea counsel convinced the Court to issue a violent felony override allowing the defendant to qualify while incarcerated for various programs for which he otherwise would have been ineligible . Where a defendant has benefitted from an advantageous plea and the record casts no doubt on his attorney's effectiveness, he has received the meaningful representation of counsel.

Dec. 6-7 (internal citations omitted). Again, I have no basis to doubt the reasonableness of those findings.

In sum, I agree with the state court judge that Douglas's counsel "cannot be held ineffective for failing obtain a plea which would have been acceptable neither to the People nor the Court." *Id.* at 9. I therefore deny the petition. Because in my view it is clear that Douglas

was not denied his Sixth Amendment right to effective assistance of counsel, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 12, 2015
      Brooklyn, New York